**Richard P. HASTINGS, and Nuclear Protection Services Inc.,**
**Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 04–1131C.**

United States Court of Federal Claims.

Oct. 5, 2007.

Richard J. McGrath, Greenblum & Bernstein, P.L.C., Reston, VA, for plaintiffs.

Trevor M. Jefferson, United States Department of Justice, Washington, D.C., with whom was Peter D. Keisler, Assistant Attorney General, for defendant.

## OPINION

ALLEGRA, Judge.

Richard P. Hastings and Nuclear Protection Services, Inc. (plaintiffs) seek compensation from the government, under 28 U.S.C. § 1498(a), for unlawful use by the Department of Energy (DOE) of a design for storing radioactive waste in a rock formation. Plaintiffs contend that DOE made unauthorized use of the invention claimed in the patent in designing and creating a nuclear repository at Yucca Mountain, Nevada.

The parties have filed cross-motions for summary judgment that preliminarily present issues concerning the construction of two elements in the patent's claims. Ultimately, however, the court must determine whether infringement or noninfringement has been demonstrated as a matter of law.

## I. BACKGROUND

United States Patent No. 4,586,849 (the '849 patent) was issued to Mr. Richard Hastings, a plaintiff herein, on May 6, 1986. The patent names Mr. Hastings as the sole inventor; however, prior to issuance, the application for the patent was assigned to the other plaintiff herein, Nuclear Protection Systems, Incorporated. As illustrated by the accompanying Figure 1 of the patent, the invention claims a particular configuration for a radioactive waste repository located in a rock formation. Distinguishing features of the invention involve the location of the storage cavity between two layers of rock (8 and 12), and the relationship between, and permeability of, these various layers of rock. The invention also includes a mechanism for sealing the cavity with a barrier or barriers (16).

FIG. 1

The '849 patent contains eight claims—1, 7 and 8 of which are independent, while 2 through 6 of which are dependent. Claim 1 of the '849 patent states:

A repository for the storage of radioactive material and other materials comprising a rock formation located above the water table in which a cavity is formed, the location of the cavity being between two substantially horizontal vertically separated layers of rock and within an intermediate layer, said intermediate layer being between said layers of rock, said layers of rock being substantially impervious to water, said intermediate layer which is *more easily penetrated* than the two layers of impervious rock and cavity sealing means disposed within said cavity.

(Emphasis added.). Claim 7 of the patent states:

A repository for storage of radioactive material comprising two layers of substantially water impervious rock located above the water table, one of said layers being above and one of said layers being below a layer of *more easily penetrable* material in which a cavity is formed, said layers of rock being substantially horizontal and vertical separated, the cavity being located in a mountainside or bluff and including a passage having its sides and base reinforced with a reinforcement material and a plurality of boreholes surrounding the cavity and *cavity sealing means* disposed within said cavity.

(Emphasis added.). Having narrowed their disagreements, the parties currently contest the construction of two elements of these claims—those highlighted above.[1]

Prior to issuance of the '849 patent, the Patent and Trademark Office (PTO) prompted Mr. Hastings to change the claim language. In its first office action, the PTO rejected all of the application's claims on the grounds that prior art rendered them obvious under 35 U.S.C. § 103. In response, Mr. Hastings modified some of the claim language, but largely disputed the obviousness characterization. After reviewing these revisions, the PTO issued its final office action, again rejecting all claims on obviousness grounds. Subsequently, plaintiffs' representative met with the examiner to discuss the application and ascertain which, if any, modifications would render the invention non-obvious. At the end of the interview, the examiner stated that plaintiffs' claims would be allowable over the prior art, but only "as substantially amended as discussed at the interview." In particular, the examiner urged that the claims be amended "to include the locations of the layers and the sealing means." On July 25, 1985, plaintiffs filed their final amendments, as proposed by the examiner. The patent subsequently issued.

On July 18, 1987, plaintiffs filed an administrative claim with DOE, asserting that the creation of a nuclear repository at Yucca Mountain, Nevada, constituted an unauthorized use of the invention claimed in the '849 patent. DOE did not act favorably upon this claim. Nearly seventeen years later, on July 8, 2004, plaintiffs filed this case, seeking damages for defendant's unlicensed use of the '849 patent, for a taking of the patent for public use without just compensation, and for defendant's breach of an implied-in-fact contract to maintain the secrecy of plaintiffs' pending patent application. On November 1, 2004, defendant moved to dismiss the latter two claims under RCFC 12(b)(1) and 12(b)(6), and on January 6, 2006, the court, by unpublished opinion, granted defendant's motion.

On February 23, 2006, defendant filed a motion for summary judgment, asserting that it had not infringed the '849 patent. On October 15, 2006, plaintiffs filed a cross-motion for summary judgment and their opposition to defendant's motion, asserting in both that there had been infringement. Following the briefing of these motions, on June 1, 2007, the court conducted a *Markman* hearing, *see Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–80 (Fed.Cir.1995). It now construes the claims presented at that hearing.

## II. DISCUSSION

Determining infringement is a two-step process. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed.Cir. 1993).

Although they agree on the meaning of many terms in the patent, the parties dispute the construction of two apparently critical phrases. Specifically, plaintiffs assert that the phrase "more easily penetrated," as used claims 1 and 7 of the patent, means "easier to pass into or through," while defendant asserts that the same element means "*softer* and easier to pass into or through." (Emphasis added). The parties also disagree as to the meaning of "cavity sealing means" as used in claims 1 and 7. While plaintiffs attempt to define this phrase directly, defendant asserts that it is a means-plus-function limitation under 35 U.S.C. § 112, ¶ 6, corresponding to a specific structure described in Figure 1 of the patent. The court will consider these disputes *seriatim.*

### A. "layer which is more easily penetrated" or "more easily penetrable"

██ In construing the above highlighted terms, we begin with common ground. The parties agree that "[i]t is a 'bedrock principle'

---

1. During the *Markman* hearing, the parties agreed that the term "layer" should be construed as "a zone; to wit, any rock stratum that is useful to recognize as a unit." They also agreed

that the term "substantially water impervious layer" should be construed as "a layer that is largely impervious to water."

of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed.Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1170, 126 S.Ct. 1332, 164 L.Ed.2d 49 (2006) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed.Cir.2004)); *see also Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1312–13 (Fed.Cir.2007); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir. 1996) ("We look to the words of the claims themselves to define the scope of the patented invention."). "Ascertaining the meaning of the claims requires that they be viewed in the context of those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed.Cir.2007) (quoting *Phillips*, 415 F.3d at 1314).[2] "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges," the Federal Circuit has held, and "claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. In such cases, the claim terms may "not require elaborate interpretation." *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed.Cir. 2001), *cert. denied*, 535 U.S. 970, 122 S.Ct. 1436, 152 L.Ed.2d 380 (2002). But, these precepts beg a more preliminary question—are there circumstances in which the language of the patent is clearer than any offered constructions, so that rendering a construction—indeed, *any* construction—would thwart, rather than promote, the goal of ascertaining how a person skilled in the art would interpret the patent?

■ Thus, a threshold issue is whether the claim element "more easily penetrated" needs to be construed at all. The Federal Circuit has held that where the claim term's meaning is apparent on its face, the court need not venture far from the claim language

itself, long admonishing courts not to make constructions that "contribute nothing but meaningless verbiage to the definition of the claimed invention." *Harris Corp. v. IXYS Corp.*, 114 F.3d 1149, 1152 (Fed.Cir.1997); *see also Nikon Corp. v. ASM Lithography B.V.*, 308 F.Supp.2d 1039, 1072 (N.D.Cal. 2004). A claim construction is required only "when the meaning or scope of technical terms and words of art is unclear … and requires resolution to determine" the issue before the court. *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed.Cir.1997), *cert. denied*, 522 U.S. 950, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997); *see also Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed.Cir.2004); *Vivid Techs., Inc. v. Am. Science & Eng'g*, 200 F.3d 795, 803 (Fed.Cir.1999). It follows, *a fortiori*, that if a claim element is clear on its face, or at least if the parties' constructions would serve to obfuscate or warp its meaning, then the court may decline to construe the element. In applying this rule, the court, of course, should not view the language of the patent in a vacuum. Rather, the Federal Circuit has instructed that "[i]f the claim language is clear on its face, then our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified." *Interactive Gift Exp., Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed.Cir.2001).

■ So, just how clear is the phrase "more easily penetrated," particularly as compared to the competing constructions offered by the parties? Both parties construe the quoted phrase as meaning "easier to pass into or through," but defendant would add to that construction the adjective "softer," as in "softer and easier to pass into or through." The adjective "softer," however, is found nowhere in the claimed invention, although the specification describes the cavity for storing the radioactive waste as being in a "relatively soft more easily penetrated layer between the two impervious layers." Several dictionaries provide various definitions for the

---

**2.** *See also Innova*, 381 F.3d at 1116 ("A court construing a patent claim seeks to accord a claim the meaning it would have to a person or ordinary skill in the art at the time of the invention."); *Vitronics*, 90 F.3d at 1582 (claim terms "are generally given their ordinary and customary meaning").

term "soft," and derivatively, for "softer," one of which stands out—that is, "more easily penetrated." Random House, Unabridged Dictionary 1813 (2001); *see also* Webster's II New Riverside University Dictionary 1105 (1984) ("soft": "easily cut, worked, or molded"); XV The Oxford English Dictionary 929 (2d ed.1989) ("soft": "of a yielding consistency"). This definition suggests that if the court were to adopt defendant's construction of the phrase "more easily penetrated" as including the word "softer," the end result would be somewhat tautologous, as the word "softer," would be defined in terms of the patent's current language. This would not be a mere redundancy, for adding the word "softer" to the construction of this element would pave the way for adding unwarranted limitations to the claims. Some definitions of the word "soft," for example, focus not on penetrability, but rather on texture, hardness and other mineralogical characteristics. *See, e.g.*, XV The Oxford Dictionary, *supra*, at 928–29 ("soft": "presenting a yielding surface to the touch;" "relatively inferior or deficient in hardness"). But, there is no evidence—intrinsic or extrinsic—suggesting that any of these characteristics, and the limitations they would spawn, have any place here.[3] As such, construing the phrase "more easily penetrated" as meaning "softer," even in the alternative, would not only add nothing new to the proper understanding of the patent, but also threaten to mislead the court in conducting its validity and infringement analyses.

■ Thus, the only legally viable construction of the phrase "more easily penetrated" is "easier to pass into or through." But, again,

---

3. For example, it is far from obvious that a layer need be softer in order to more easily penetrated. The reverse, indeed, might well be true as a hard layer might be more brittle and more easily fractured or might be more stable and more easily penetrated by particular types of drills or boring machines. Yet, defendant has provided no intrinsic or extrinsic evidence that bears on these issues. Indeed, it is obvious that defendant seeks to engraft the word "softer" onto the patent based on its assertion, in its motion for summary judgment, that the proposed site for the Yucca Mountain repository contains all "hard" rock.

4. This situation though unusual is far from unprecedented. *See Hynix Semiconductor, Inc. v.*

that construction adds nothing to the understanding of the patent and would, in the words of the Federal Circuit, serve only to add "meaningless verbiage to the definition of the claimed invention." *Harris Corp.*, 114 F.3d at 1152. And nothing in the somewhat limited patent prosecution history convinces the court otherwise. Therefore, the court declines to adopt this construction and determines instead that the best course is to view the words actually used by the patent as reflecting most accurately how one skilled in the art would view that language. In short, those terms are best left undefined.[4] *See Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1268 (Fed.Cir.2001); *Vitronics*, 90 F.3d at 1582.

## B. "cavity sealing means"

■ Turning to the next disputed element, the court preliminarily must determine whether the phrase "cavity sealing means" describes a mean-plus-function limitation that invokes 35 U.S.C. § 112. The last paragraph of this section provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. Under this provision, "an applicant can describe an element of his invention by the result accomplished or the function served, rather than describing the item or elements to be used (*e.g.*, 'a means of connecting Part A to Part B,' rather than a

---

*Toshiba Corp.*, 2006 WL 2547463 at *14 (N.D.Cal. Sept. 1, 2006) (refusing to adopt construction that would "replace the present term with a more ambiguous one"); *Applera Corp. v. Micromass UK, Ltd.*, 186 F.Supp.2d 487, 508 (D.Del.2002), *aff'd*, 60 Fed.Appx. 800 (Fed.Cir. 2003) (finding that the "plain meaning" of the term is best); *ASM America, Inc. v. Genus, Inc.*, 260 F.Supp.2d 827, 850 (N.D.Cal.2002) ("The Court agrees ... that there is no better way to define 'generally circular' than to simply say 'generally circular.' Accordingly, the Court declines to construe the term."); *see also W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC*, 370 F.3d 1343, 1351 (Fed.Cir.2004).

'two-penny nail')." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 27, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *see also Phillips*, 415 F.3d at 1303; *Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed.Cir.2003) ("Through the use of means-plus-function limitations, patent applicants are allowed to claim an element of a combination functionally, without reciting structures for performing those functions.").[5]

■ The limitation "cavity sealing means" is presumed to be a means-plus-function limitation because it contains the word "means." *Apex*, 325 F.3d at 1371; *CCS Fitness Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir.2002).[6] Nonetheless, this presumption is not conclusive as it can be rebutted if: (i) "the claim specified no corresponding function for 'means,'" *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427 (Fed.Cir. 1997);[7] or (ii) "the claim, in addition to the functional language, recites structure sufficient to perform the claimed function in its entirety." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed.Cir.2003).[8] *See also Biomedino, LLC v. Waters Techs. Corp.*,

490 F.3d 946, 950 (Fed.Cir.2007); *York Prods.*, 99 F.3d at 1574. But, neither of these grounds for rebutting the presumption exist here.

■ First, claim 7 states that the repository includes "a passage having its sides and base reinforced with a reinforcement material and a plurality of boreholes surrounding the cavity and cavity sealing means disposed within said cavity." This language specifies a corresponding function for the means—that of "cavity sealing." Second, the claim itself recites no structure sufficient to perform the claimed function in its entirety, referring only to "a cavity sealing means disposed within said cavity." That the specification cites a barrier as performing this sealing function does not trigger the exception to the means-plus-function presumption, because, as is plain from the statute, that exception applies only where the claim language itself recites a structure to perform the claimed function. *See* 35 U.S.C. § 112, ¶ 6; *Envirco*, 209 F.3d at 1365 (presumption fails if "the claim itself recites sufficient structure to perform the claimed function"); *Air Turbine*

---

5. The "means" claiming provision was not contained in the 1870 Act, but rather was added by Congress in 1952 in response to *Halliburton Oil Well Cementing Co. v. Walker*, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3 (1946). In that case, the Supreme Court rejected claims that "do not describe the invention but use 'conveniently functional language at the exact point of novelty.'" *Id.* at 8, 67 S.Ct. 6 (citation omitted); *see also In re Donaldson Co.*, 16 F.3d 1189, 1194 (Fed.Cir. 1994). As described by the Supreme Court "[s]ection 112, ¶ 6, now expressly allows so-called 'means' claims, with the proviso that application of the broad literal language of such claims must be limited to only those means that are 'equivalen[t]' to the actual means shown in the patent specification." *Warner–Jenkinson*, 520 U.S. at 28, 117 S.Ct. 1040.

6. Plaintiffs assert that the presumption only applies if the claim element uses the phrase "means for," as in, a "means for cavity sealing." The decisional law, however, is to the contrary, as it generally implies the existence of the word "for" in language typically as giving rise to a means-plus-function. *See, e.g., Signtech USA, Ltd. v. Vutek, Inc.*, 174 F.3d 1352, 1356 (Fed.Cir.1999) ("Although the phrase 'means for' is not used, the phrase 'ink delivery means' is equivalent to the phrase 'means for ink delivery,' because 'ink delivery' is purely functional language.").

7. For examples of cases in which the presumption was rebutted on this ground, see *York Prods.*,

*Inc. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1574 (Fed.Cir.1996) (stating that claim language, such as "means formed on the . . . sidewall portions including . . . ridge members," that "vaguely hints" a function is not sufficient to invoke § 112, when "what follows is a detailed recitation of structure"); *Pirelli Cable Corp. v. Ciena Corp.*, 988 F.Supp. 424, 434 (D.Del.1997) (finding "optical coupling means" as only a "detailed recitation of structure" despite that the function of the claim is "eviden[t]" from other parts of the patent").

8. For examples of cases in which a claim recited a structure, *see, e.g., Envirco Corp. v. Clestra Cleanroom, Inc.*, 209 F.3d 1360, 1365 (Fed.Cir. 2000) (holding sufficient structure was recited where the limitation was "second baffle means" because it used the word "baffle" (a physical structure) and the claim "described the particular structure of this particular baffle"); *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1303–04 (Fed.Cir.1999) (holding a claim recited sufficient structure where the limitation was "positioning means" and the claim "provid[ed] a list of the structure underlying the means"); *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 531–32 (Fed.Cir.1996) (holding that the limitation "perforation means for tearing" was not a means-plus-function claim because the word "perforation" constituted sufficient structure).

Tech., Inc. v. Atlas Copco AB, 2003 WL 22939357 at *4 (S.D.Fla. Oct. 3, 2003) ("The structure required to overcome the presumption of means plus function format must be in the claim itself."); see also Gart v. Logitech, Inc., 254 F.3d 1334, 1343 (Fed.Cir.2001). Accordingly, it does not appear that plaintiffs have rebutted the presumption that § 112, ¶ 6, applies to the "cavity sealing means"— that is, this language describes a means-plus-function limitation.

Once a means-plus function term is identified, the interpretation thereof proceeds in a two-step fashion. Preliminarily the court must identify the function recited by the claim. JVW Enters. v. Interact Accessories, Inc., 424 F.3d 1324, 1330 (Fed.Cir.2005); Altiris, 318 F.3d at 1375; Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1427 (Fed. Cir.1997). Then, it must determine "the corresponding structure in the written description that is necessary to perform that function." Altiris, 318 F.3d at 1375; Micro Chem., Inc. v. Great Plains Chem. Co., 194 F.3d 1250, 1258 (Fed.Cir.1999). In this regard, the Federal Circuit has instructed that "[s]tructure disclosed in the specification is 'corresponding structure' only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." B. Braun Med., v. Abbott Labs., 124 F.3d 1419, 1424 (Fed.Cir. 1997); see also Altiris, 318 F.3d at 1375. The court, however, "may not import functional limitations that are not recited in the claim, or structural limitations from the written description that are unnecessary to perform the claimed function." Wenger Mfg., Inc. v. Coating Mach. Sys., Inc., 239 F.3d 1225, 1233 (Fed.Cir.2001); see also Micro Chem., 194 F.3d at 1258.[9]

Here, the function named in the means clause plainly involves "sealing" the repository, leaving the question whether the structure underlying this "sealing" function is adequately described in the written description. In fact, the specification describes this function in the following terms—

> The radioactive waste material is stored at the end of the side passages in the storage areas 14 behind barriers 16. The barriers 16 may be constructed of or lined with lead or other shielding material and may be constructed to seal off the storage areas 14.

From this passage, it is apparent that one skilled in the art would readily determine that the corresponding structure that performs the sealing function are the barriers, depicted in Figure 1 as item 16, which are disposed within the cavity. Certainly, there has been no showing otherwise.

Nonetheless, defendant vigorously argues that those barriers must be constructed of, or lined with, lead or some other radiation shielding material. But, such a callus bridge between scion and stock will not take for several reasons. First, defendant fails to come to grips with the fact the specification merely indicates that the barriers "may" be constructed or lined with lead or other shielding materials, permissive language that certainly does not connote that they must be constructed of such materials.[10] Further, nothing in the prosecution history suggests that the barriers must necessarily perform a shielding, rather than sealing, function, thereby requiring them to be constructed of particular materials—there is, for example, no indication whatsoever that the barriers needed to perform this shielding function in order to distinguish prior art. In fact, the specification's references to the barriers

---

9. Failure to disclose adequate structure corresponding to the recited function in accordance with 35 U.S.C. § 112, ¶ 1, results in the claim being of indefinite scope and thus invalid under 35 U.S.C. § 112, ¶ 2. See Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1376 (Fed.Cir.2001); In re Dossel, 115 F.3d 942, 946 (Fed.Cir.1997).

10. While the word "may" can, in some contexts, mean "must," see Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 198, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000), it ordinarily con-

notes discretion and choice. See McBryde v. United States, 299 F.3d 1357, 1362 (Fed.Cir. 2002) ("[t]he word 'may,' when used in a statute usually implies some degree of discretion"). The Federal Circuit has employed this interpretation in construing various patents. See, e.g., In re Johnston, 435 F.3d 1381, 1384 (Fed.Cir.2006) (referring to the word "may" and stating "[a]s a matter of linguistic precision, optional elements do not narrow the claim because they can always be omitted").

were not modified when Mr. Hastings amended his claims to include a "sealing means"—further indication, in the court's view, that neither the applicant nor the examiner thought that constructing barriers of shielding material was necessary to render the claims non-obvious. Nor, despite defendant's claims to the contrary, is it somehow manifest or scientifically obvious that the barriers must perform the task of shielding the radiation emanating from the stored radioactive material, lest that radiation leak. The court was provided no extrinsic evidence of this, leaving open the possibility that this shielding function could be performed by other means not described in the patent (*e.g.,* by the material encasing the radioactive material). Finally, it should not be overlooked that claim 1 of the patent does not require that the repository be solely for the storage of radioactive material, but rather describes a "repository for the storage of radioactive materials *and other materials,*" suggesting that at least some of the sealing means could involve areas of the repository that do not include radioactive materials.

Based on the foregoing, the court concludes that the phrase "cavity sealing means" is means-plus-function limitation under section 112, ¶ 6, but finds that this means is not limited to barriers constructed of, or lined with, lead or other shielding materials.

### C. Infringement

 The court finally turns to the issue whether either party is entitled to judgment as a matter of law as to infringement. It finds that neither party is entitled to such a judgment.

A claim is "literally infringe[d]" if each properly construed claim element directly reads on the accused product or process. *See Jeneric/Pentron, Inc. v. Dillon Co.,* 205 F.3d 1377, 1382 (Fed.Cir.2000). By comparison, "[t]he doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 733, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002); *L.B. Plastics, Inc., v. Amerimax*

*Home Prods., Inc.,* 499 F.3d 1303, 1309–10 (Fed.Cir.2007).

The question of infringement, whether it be literal or under the doctrine of equivalents, normally is a question of fact. *See L.B. Plastics,* 499 F.3d 1303, 1308–09; *Cook Biotech Inc. v. Acell, Inc.,* 460 F.3d 1365, 1373 (Fed.Cir.2006). As such, summary judgment of infringement or noninfringement is improper unless the court can find that every limitation recited in the properly construed claim is or is not found in the accused device. *See In re Gabapentin Patent Litigation,* 503 F.3d 1254, 1258–59, 2007 WL 2752892 at \*3–4 (Fed.Cir.2007); *Abbott Labs. v. Torpharm, Inc.,* 300 F.3d 1367, 1373 (Fed.Cir.2002); *see also Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 39 n. 8, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). In this regard, this court's function is not to weigh the evidence, but to "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *see also Agosto v. INS,* 436 U.S. 748, 756, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978) ("[A] [trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented."); *Am. Ins. Co. v. United States,* 62 Fed.Cl. 151, 154 (2004). The court must determine whether the evidence presents a disagreement sufficient to require fact finding, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505; *Lockheed Martin Corp. v. United States,* 70 Fed.Cl. 745, 748–49 (2006). In doing this, all facts must be construed in a light most favorable to the nonmoving party and all inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. 1348 (citing *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Lockheed Martin,* 70 Fed.Cl. at 749; *L.P. Consulting Group, Inc. v. United States,* 66 Fed.Cl. 238, 240 (2005).

In the case *sub judice,* it is clear, both from the parties briefs and the oral argument, that there are genuine and material questions here as to the operation of the accused device. In particular, the parties

clearly dispute the nature of the formation, composition, penetrability, and other geologic characteristics of the layers of rock at Yucca Mountain. Supported by various materials, plaintiff also disagrees with defendant's assertions regarding what has actually been constructed at the Yucca Mountain facility and whether design plans for the facility are proposed, in testing, or final. Accordingly, in the court's view, the infringement claims here are not amenable to resolution via summary judgment.

## III. CONCLUSION

This court will not paint the lily. Based on the foregoing, it declines to adopt either parties' construction of the claim elements "layer which is more easily penetrated" or "more easily penetrable," finding that the actual language of the patent provides the clearest indication of what one skilled in the art would believe this language means. Further, the court concludes that the phrase "cavity sealing means" is a means-plus-function limitation under § 112, ¶ 6, for which the corresponding structure are the barriers depicted in Figure 1 of the patent. Ultimately, the court finds that summary judgment on the issue of infringement is inappropriate, owing to the existence of genuine issues of material fact. Accordingly, the parties cross-motions for summary judgment are hereby **DENIED.**

On or before October 30, 2007, the parties shall file a joint status report proposing a schedule for this case to proceed to trial, which report shall propose a location for trial and a schedule for filing the pretrial documents described in Appendix A to this court's rules.

**IT IS SO ORDERED.**