O’MALLEY, Circuit Judge,
concurring in part, dissenting in part.
I agree that the Board correctly construed the term “anticipation” in U.S. Patent No. 8,488,173 (“the ’173 patent”). I would find, though, that the Board misconstrued the terms “Go button” and “interfacing” to permit the use of manual intervention to render and transmit a scanned document. See Ricoh Ams. Corp. v. MPHJ Tech. Invs., LLC, No. IPR2014-00538, 2015 WL 4911675, at *1, *10-22 (P.T.A.B. Aug. 12, 2015). Under the construction of the disputed claim terms comporting with this limitation, I would affirm the Board’s finding that claims 1-3 are anticipated, but reverse its finding that claims 4-8 are anticipated. From the majority’s conclusions otherwise, I respectfully dissent.
BACKGROUND
A. The T73 Patent
The ’173 patent is titled “distributed computer architecture and process for document management.” In short, the ’173 patent “manages paper so that it can be electronically and seamlessly copied in and out of devices and business applications ... with an optional single-step operation.” T73 patent, at Abstract. The ’173 patent describes the invention in terms of a system, software, and processes for implementing a “Virtual Copier” (“VC”). The VC “[i]n its simplest form ... extends the notion of copying from a process that involves paper going through a conventional copier device, to a process that involves paper being scanned from a device at one location and copied to a device at another location.” Id. col. 45, 11. 48-53. The patent covers copying of both physical and electronic paper. See, e.g., id. col. 6, 11. 46-48 (“This GO button can copy paper, whether physical or electronic, from one device and or application to another device and/or application.”).
On November 13, 1998, Laurence Klein, the named inventor of the ’173 patent,'filed Provisional Patent App. No. 60/108,798 (“the ’798 provisional application”). The ’798 provisional application is incorporated by reference into the ’173 patent. Id. col. 1,11.14-16.
Independent claims 1 and 4 of the ’173 patent are at issue on appeal. The dependent claims rise and fall with the independent claims.
Claim 1 reads:
A system capable of transmitting at least one of an electronic image, electronic graphics and electronic document to a plurality of external destinations including one or more of external devices, local files and applications responsively connectable to at least one communication network, comprising:
at least one network addressable scanner, digital copier or other multifunction peripheral capable of rendering at least one of said electronic image, electronic graphics and electronic document in response to a selection of a Go button;
[[Image here]]
at least one processor responsively connectable to said at least one memory, and implementing the plurality of interface protocols as a software application for interfacing and communicating with the plurality of external destinations including the one or more of the external devices and applications,
[[Image here]]
*1372 wherein one of said plurality of interface protocols is employed when one of said external destinations is email application software;
[[Image here]]
wherein, in response to the selection of said Go button, an electronic document management system integrates at least one of said electronic image, electronic graphics and electronic document using software so that said electronic image, electronic graphics and electronic document gets seamlessly replicated and transmitted to at least one of said plurality of external destinations ...
Id. col. 86, 11. 9-50 (emphases added). Claim 4 is a method claim, and the relevant limitations recite:
A method of managing at least one of an electronic image, electronic graphics or electronic document comprising the steps of, in any order:
[[Image here]]
(c) communicatively linking said scanner, digital copier or other multifunction peripheral with said plurality of said external destinations via application-level interface protocols;
(d) interfacing between at least one of said scanner, digital copier or other multifunction peripheral and email application software using a first of said interface protocols ...
Id. col. 87,11.11-27 (emphases added).
B. Prior Art References
The Board instituted inter partes review based on three prior art references: (1) Xerox Corporation, Xerox Network Systems Architecture General Information Manual, Apr. 1985 (“XNS”) (with inherent features evidenced by GIS 150, Xerox Corporation, Xerox 150 Graphic Input Station Operator And Reference Manual 150, Jan. 1985 (“GIS 150”)); (2) U.S. Patent No. 5,513,126 to Harkins (“Harkins”); and (3) U.S. Patent No. 5,818,603 to Motoyama (“Motoyama”).
i. XNS
The XNS manual discusses computer networking, particularly in the context of integrated office systems and document management. XNS “provides information on the standards and protocols that comprise the architecture” of Xerox Network Systems. J.A. 413. XNS also describes “document management,” which involves creating, capturing, replicating, and printing electronic or paper documents at the office. J.A. 416. XNS discloses a “Graphic input station” (“GIS”) as one networked device in its “Graphic input model.” “The Xerox 150 scanner uses [the Graphic input] model in providing scanned image service to XNS users.” J.A. 520.
The GIS 150 manual describes the inherent capabilities of the Xerox 150 scanner. The GIS 150 manual discloses a “START button” that “causes the 150 GIS to begin scanning.... After scanning is complete the image is automatically sent to the selected destination, and the display will flash SENDING while transmission is taking place.” J.A. 633. The GIS 150 manual also states that “[t]here can be a maximum of five destinations from which to choose. The destination device can be either a file server or a print server.” J.A. 738. Scanned documents can be “distributed with XNS mail, edited at a workstation, or sent to any device that is directly or indirectly connected to the internet (including remote facsimile machines).” J.A. 523. The GIS 150 manual discloses scanning a document and sending it. to some electronic repository, and XNS discloses accessing the repository and emailing the documents to an external destination in two steps.
*1373 ii. Harkins
Harkins discloses a Xerox network “having interconnected printers, scanners, facsimile devices or file servers.” Harkins, col. 5,11. 47-48. The invention enables a sender to “automatically distribute information to a receiver on a network using devices (such as printers and facsimile machines) and communication channels (such as electronic mail)” defined by a receiver’s user profile. Id. at Abstract. Similar to XNS, Harkins teaches scanning a document and transmitting it directly to a local file.
Harkins also teaches transmitting a document to an external device or application that renders the document in the manner specified by the recipient’s user profile. Id. col. 10, 11. 37-45. To initiate the transmission, the sender of a document “seleet[s] a document from document source 45 (e.g. report 34) and move[s] it to [the desired] communication channel.” Id. col. 10,11. 56-63. The manual intervention of the sender is what the parties refer to as “Harkins’s drag-and-drop operation.”
iii. Motoyama
Motoyama relates to communicating with and monitoring, diagnosing, and controlling machines — including a facsimile machine or different copiers — using multiple communication protocols. J.A. 37. It is undisputed that Motoyama discloses some of the claim limitations at issue, including “at least one memory” and “at least one processor.”
C. Procedural History
On March 25, 2014, Ricoh Americas Corporation, Xerox Corporation, and Lexmark International Corporation, Inc. (collectively, “Appellees”) petitioned for inter partes review, challenging all ’173 patent claims for anticipation by both XNS and Harkins, and obviousness over Harkins in view of Motoyama. The Board instituted on all asserted grounds and construed several terms, including “Go button,” “interfacing,” and “application.” MPHJ appeals these constructions.
The Board found claims 1-8 to be anticipated by both XNS and Harkins. The Board also held claims 1-8 unpatentable over the combination of Harkins and Moto-yama for obviousness. MPHJ appeals these determinations.
Discussion
“Under 28 U.S.C. § 1295(a)(4), we have jurisdiction to review the Board’s final written decisions in IPRs.” Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc., 817 F.3d 1293, 1297 (Fed. Cir. 2016). We review the Board’s factual findings for substantial evidence and its legal conclusions de novo. In re Gartside, 203 F.3d 1305, 1315-16 (Fed. Cir. 2000). “Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence.” In re Mouttet, 686 F.3d 1322, 1331 (Fed. Cir. 2012). It is “such relevant evidence. as a reasonable mind might accept as adequate to support a conclusion.” In re Applied Materials, Inc., 692 F.3d 1289, 1294 (Fed. Cir. 2012) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).
A. Claim Construction
When reviewing the Board’s claim construction, “[w]e review underlying factual determinations concerning extrinsic evidence for substantial evidence and the ultimate construction of the claim de novo.” TriVascular, Inc. v. Samuels, 812 F.3d 1056, 1061 (Fed. Cir. 2016) (quoting In re Cuozzo Speed Techs., LLC, 793 F.3d 1268, 1280 (Fed. Cir. 2015), aff'd sub nom., Cuozzo Speed Techs., LLC v. Lee, — U.S. -, 136 S.Ct. 2131, 195 L.Ed.2d 423 (2016)). “[C]laim construction in IPRs is not governed by Phillips. Under Cuozzo, claims are given their broadest reasonable *1374 interpretation consistent with the specification, not necessarily the correct construction under the framework laid out in Phillips.” PPC Broadband, Inc. v. Corning Optical Commc’ns RF, LLC, 815 F.3d 734, 742 (Fed. Cir. 2016) (citation omitted).
i. “Go Button”
The term “Go button” is used in claim 1 of the ’173 patent and its dependent claims. The Board construed “Go button” to mean “an operation that begins a process.” J.A. 12. MPHJ proposes adding the following language to the Board’s construction: “and requires no further action from the user to complete.” MPHJ Opening Br. at 18.
MPHJ’s construction precludes manual or user intervention to render a scanned document or to transmit it to an external destination. Instead, both “rendering” and transmission must take place in direct response to the selection of the “Go button,” in a single step. Under MPHJ’s construction, selecting the “Go button” must be both necessary and sufficient to “render” the document to be copied, and rendering must take place before any transmission of the document to an external destination.
Relatedly, MPHJ argues that the Board erred in applying the “rendering” limitation of claim 1 which reads, “at least one network addressable scanner, digital copier or other multifunction peripheral capable of rendering at least one of said electronic image, electronic graphics and electronic document in response to a selection of a Go button.” ’173 patent, col. 86, 11. 15-19 (emphases added). According to MPHJ; the Board erred because, under its interpretation, the scanner, copier, or other multifunctional peripheral does not need to perform the “rendering”; instead, the “rendering” can take place as a result of a “drag-and-drop” operation, requiring a second step. MPHJ also argues that, under the Board’s interpretation, transmitting the document can take place before rendering it.
Appellees assert that, absent lexicography or disavowal, we should not depart from the plain meaning of the term “Go button.” See Thorner v. Sony Comput. Entm’t Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012). “The standards for finding lexicography and disavowal are exacting.” GE Lighting Sols., LLC v. AgiLight, Inc., 750 F.3d 1304, 1309 (Fed. Cir. 2014). To act as a lexicographer, a patentee must “clearly set forth a definition of the disputed claim term” and “clearly express an intent to redefine the term.” Thorner, 669 F.3d at 1365 (internal quotation marks omitted). Appellees also argue that claim 1 merely requires a device “capable of rendering” a document and does not require actual rendering. Appellees contend that, even if “rendering” is limiting, claim 1 broadly requires both “rendering” and transmission in response to the selection of the “Go button,” but does not require the two actions to occur in a particular order or in a single step.
Claim 1 requires “a selection of a Go button” and then further specifies what happens in response to “the selection of said Go button”; in effect, claim 1 requires (1) rendering an electronic document in response to a selection of a “Go button,” and (2) integrating the electronic document so that it is replicated and transmitted to an external destination in response to the same selection of the “Go button.” Thus, the antecedent basis for “the selection” requiring transmission is “a selection” requiring rendering. While I agree with Appellees that the claims do not appear to require a particular order between “rendering” and transmission, that is where my agreement with Appellees ends with respect to the claim terms.
The central dispute over these terms is whether, regardless of order, both “ren *1375 dering” and “transmi[ssion]” must take place (1) in a single step, and (2) without manual intervention. The language of the 173 patent and the ’798 provisional application, incorporated by reference into the 173 patent, provides guidance on this point. See Trs. of Columbia Univ. v. Symantec Corp., 811 F.3d 1359, 1365-66 (Fed. Cir. 2016) (using statements in the provisional application to guide claim construction); Vederi, LLC v. Google, Inc., 744 F.3d 1376, 1383 (Fed. Cir. 2014) (same); Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000) (explaining that a provisional application incorporated by reference is “effectively part of the host document as if it were explicitly contained therein.”). The majority acknowledges that a provisional application may contribute to understanding the claims. Maj. Op. at 1369.
In explaining the function of the VC and “Go button” in comparison to “other applications” in the prior art, the ’798 provisional application states:
The IMAGinE Virtual Copier can copy paper from a physical device directly into a third-party software application in one step. Using other applications, such as Visioneer’s Paperport or Xerox’s Pag-is, the user must first “import” or scan paper into the capture application and then drag or direct the output to another location. With the IMAGinE Virtual Copier, a single button (the Go button) directly copies paper from a scan-like device (either a copier with a scan attachment or a scanner) and places it within the third-party application.[1]
J.A. 1819 (emphases added). The emphasized words indicate that copying and transmission both take place in response to only the selection of the “Go button.” Further, this passage makes distinctions between “other applications” in the prior art requiring manual intervention and the claimed VC. The ’798 provisional application additionally supports the single-step nature of the operation by stating that the purpose of the patent “is to protect our new ‘Go’ operation that designates a single-step copying function for copying ... between disparate digital imaging devices.” J.A. 1818 (emphasis added). In addition, the ’798 provisional application describes the user’s experience as “Patent: The IMAGinE Virtual Copier Interface: A Simple Method of ... the Complex Operation of Copying Files ... in One Step.” J.A. 1820 (emphasis added).
The T73 patent specification reiterates this notion, stating that the “VC extends the notion of a copier, which simply replicates the image of an original document onto another piece of paper using a single GO or START button, to do a similar operation in software so that the image gets seamlessly replicated into other devices or applications or the Internet.” 173 patent, col. 46, 11. 36-40 (emphases added). The ’173 specification also explains that the VC “will accomplish all translations between device and applications automatically and seamlessly.” Id. col. 7, 11. 3-5; col. 47, 11. 1-3; col. 70, 11. 37-39 (emphasis added). The T73 patent uses the terms “automatically” and “seamlessly” in describing the action of the VC and “Go button” throughout the specification. In addition, the ’173 patent explains that “[t]he virtual copy operation can be can-celled prior to its completion by calling the Cancel method.” Id. col. 78, 11. 58-63. The “Go button” therefore triggers a process *1376 that is carried out to completion unless it is cancelled.
I conclude that these statements collectively rise to the level of clear and unmistakable disavowal of claim scope. Disavowal requires that “the specification makes clear that the invention does not include a particular feature.” SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001).
In support of its construction, the majority argues that the patentee “deleted” the single-step nature of the operation from the 173 patent. Maj. Op. at 1369. I disagree with this characterization. Not only does the 173 patent in fact make repeated references to a single-step operation, but the 173 patent' specification incorporates in full the ’798 provisional application, including all of the statements the patentee made about the single-step nature of the VC invention. Despite the majority’s assertions to the contrary, the incorporation of these statements is significant for understanding the intended scope of the claims. In fact, by incorporating the ’798 provisional application, the patentee did the opposite of deleting any references to a single-step operation.
The majority also contends that the 173 patent’s use of the term “optional” in two places in the specification, when referring to the “single-step Go operation,” makes irrelevant the clear indications in the ’798 provisional application and in the 173 patent that the patentee intended to claim a single-step operation in which the patentee has disavowed the use of manual intervention between use of the “Go button” and the rendering and transmission of a document to an external destination. See Maj. Op. at 1369. I disagree with the majority’s conclusion. First, Appellees failed to brief the meaning of the term “optional” in the 173 patent, instead arguing generally that the ’798 provisional application and the 173 patent merely describe some single-step embodiments, and that MPHJ failed to point to any “language of exclusion ... to suggest that the patentee intended to preclude multi-step rendering and transmitting in response to the Go button.” Appellees Br. at 39-40. As I have explained above, I disagree with Appellees’ argument on this issue based on the clear language of the 173 patent, including the incorporated statements from the ’798 provisional application. Second, it is not clear in either instance whether the term “optional” is intended to modify “single-step” rather than the “operation” itself. Read in the context of the entirety of the specification, the more logical conclusion is that the term “optional” modifies the entire term “single-step operation,” meaning that implementing the operation is optional, not that how the operation, once implemented, works is optional. Third, nowhere do the claims themselves use “optional” language, or, indeed, any language inconsistent with the conclusion that the patentee has disavowed manual intervention. The majority further fails to explain how an “optional” single-step Go operation comports with the repeated references to the “seamless” and “automatic” operation of the “Go button” in the ’173 patent.
MPHJ explains correctly that the claim language requires a “multifunction peripheral” to be “capable of rendering” a document in résponse to the selection of the “Go button.” Given that the ability to render must exist, “rendering” cannot be read out of the claim just because an actual rendering need not take place. In addition, both parties agree that “rendering” and transmission to an external destination must occur “in response” to the selection of the “Go button.” For these reasons, I find that the proper construction of “Go button” is “an operation that begins a process and requires no further action from the user to complete.” Claim 1 therefore excludes the use of a “drag-and-drop” op *1377 eration to complete the rendering and transmission process.
ii. “Interfacing”
MPHJ also argues that the Board misconstrued “interfacing,” found in claims 4-8 of the ’173 patent. The Board construed this term to mean “making a direct or indirect connection between two elements so they can work with each other or exchange information.” J.A. 15. According to MPHJ, the Board erred because the broadest reasonable interpretation of “interfacing” is “making a direct or indirect connection between two elements so they can directly work with each other or directly exchange information.” MPHJ Opening Br. at 9 (emphases added).
MPHJ asserts that the Board’s construction erroneously captures indirect communications between a scanner and an email system comprised of the intervening manual steps of accessing a previously-scanned document and loading it into an email as an attachment. In support, MPHJ cites to the inter partes review oral hearing, in which counsel for MPHJ recited the ’798 provisional application’s statement that, “using other applications such as Vi-sioneer’s PaperPort or Xerox’s Pages, which are prior art systems, the user must first import or scan paper into a capture application and then drag and direct the output to another location.” J.A. 367,1. 25-J.A. 368,1. 4. In addition, MPHJ notes that the ’798 provisional application provides an express definition of the VC interface:
The IMAGinE Virtual Copier Interface: A Simple Method of Presenting to a User the Complex Operation of Copying Files or Electronic Images to and from Digital Imaging Devices and/or Software Applications in One Step.
J.A. 1820 (emphases added).
As with the “Go button” term discussed above, I conclude that MPHJ has met its burden to show prosecution history disclaimer and lexicography as to this term. When the specification distinguishes the prior art, the invention should not be construed to encompass the prior art features. See SciMed, 242 F.3d at 1341 (“Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.”). Appel-lees’ only real argument in response to MPHJ on this point is their contention that MPHJ’s construction is improper because it is not based on statements explicitly in the ’173 specification. Because the ’798 provisional application was incorporated in full into the T73 specification, however, this argument is unavailing.
For these reasons, “interfacing” and “Go button” should be construed consistently, such that, as to both terms, MPHJ has disclaimed manual user intervention and additional steps before a document is both rendered and transmitted.
iii. “Application”
The terms “application” or “applications” appear in all claims at issue. Claim 1 recites “implementing the plurality of interface protocols as a software application for interfacing and communicating with the plurality of external destinations including the one or more of the external devices and applications.” ’173 patent, col. 86, 11. 23-27. The Board construed “application” as follows:
[A] program, or group of programs, which operate together in a system to perform a function or functions, and the programs can be stored in a variety of places on a variety of devices, and operate in a distributed manner. An applica *1378 tion may include software and hardware, and performs a function or functions.
J.A. 10-11. MPHJ asserts that “application” should be construed as “a discrete software program executable on an operating system for the purpose of accomplishing a task.” MPHJ Opening Br. at 31. In suggesting a narrower construction than the construction adopted by the Board, MPHJ contends that “applications” must be separate and discrete.
Appellees respond that MPHJ’s construction is not the broadest reasonable interpretation of “application,” and I agree. The specification offers several examples of an “application,” including: “Lotus Notes, Microsoft Exchange, the Internet, or an electronic filing system.” 173 patent, col. 6,11. 61-63. Notably, the internet is not “a discrete software program executable on an operating system for the purpose of accomplishing a task.” In context, this specification passage reads that:
The power of Virtual Copier is the fact that the [source] can be a physical device ... or an application (e.g. Lotus Notes, Microsoft Exchange, the Internet, or an electronic filing system). The [destination] can also be a physical device ... or an application (e.g. Lotus Notes, Microsoft Exchange, the Internet, or an electronic filing system).
Id. col. 6,11. 60-66 (emphases added). Even the list of potential sources of the document, not just the destinations, includes the internet.
Based on the plain language of the specification, I concur with the majority that MPHJ’s proposed construction is improper. Appellees correctly note that MPHJ’s construction also improperly excludes a distributed architecture. The T73 patent teaches that the VC “engine object layer and the engine may be optionally located in a distributed environment on different machines, servers, and the like.” Id. col. 67, 11. 62-64. The terms “distributed component interaction” and “distributed' environment” are used throughout the specification. See, e.g., id. col. 65,1. 4; id. col. 66, 11. 13-14; id. col. 67, 11. 27-36. Adopting MPHJ’s construction would exclude embodiments where the VC application is distributed across various devices, contrary to the language of the patent. MPHJ’s construction, requiring that an “application” be discrete, is also contrary to its argument that the specification requires different source and destination applications.
B. Anticipation
“Anticipation under 35 U.S.C. § 102 is a question of fact, while obviousness under § 103 is a question of law based on underlying findings of fact.” Kennametal, Inc. v. Ingersoll Cutting Tool Co., 780 F.3d 1376, 1381 (Fed. Cir. 2015). What the prior art discloses is a factual inquiry. Para-Ordnance Mfg., Inc. v. SGS Imps. Int’l, Inc., 73 F.3d 1085, 1088 (Fed. Cir. 1995). Where our claim construction differs from that of the Board, we determine questions of anticipation and obviousness under our claim construction. See, e.g., In re Man Mach. Interface Techs. LLC, 822 F.3d 1282, 1287-89 (Fed. Cir. 2016).
i. Anticipation by XNS[2]
a. XNS Anticipates Claims 1-3
The Board found that XNS anticipated claims 1-3 because XNS teaches a “ ‘Go button’ or START button of GIS 150 [that] can initiate a scan in one step and send a document via email in another.” J.A. 24-25. MPHJ claims that, under its construction of “Go button,” rendering and transmission *1379 must be performed in response to the same selection of the “Go button.” XNS does not disclose this concept, according to MPHJ. Appellees assert that the Board correctly found that XNS discloses that the GIS 150 scanner has a “START button” that is capable of scanning a document and sending it to a file service for storage, or a printer service for printing.
There is no dispute that XNS discloses document distribution by email after a rendering step. Additionally, I conclude that both rendering and transmission to a file server take place in response to a single selection of a “Go button” in XNS.
MPHJ does not really dispute these conclusions. Instead, MPHJ argues that, even if XNS discloses use of a single-step process for sending a document to a file service or printer service, it does not anticipate claim 1 because XNS employs a second step with manual intervention to access email as an external source.
A system practicing claim 1 must have an external destination that may be “email application software.” Based on claim l’s clause, “wherein one of said plurality of interface protocols is employed when one of said external destinations is email application software,” MPHJ asserts that email must be a possible external destination. Otherwise, MPHJ claims that the Board would be reading that “wherein” language out of the claim.
The Board did not expressly resolve whether email application software is a required destination because it determined that claim 1 does not even require a single step. Appellees contend that claim 1 does not require the external destination to be email application software, because the language to which MPHJ points is merely conditional: “when one of said external destinations is email application software.” ’173 patent, col. 86, 11. 28-30 (emphasis added). Appellees therefore assert that this “wherein” clause is a conditional, non-limiting, nonspecific clause that does not narrow the claim. Under this reasoning, Appellees assert that MPHJ’s anticipation argument fails even if MPHJ is correct in asserting that claim 1 requires a single-step operation. Appellees are correct on this point.
“As a matter of linguistic precision, optional elements do not narrow the claim because they can always be omitted.” In re Johnston, 435 F.3d 1381, 1384 (Fed. Cir. 2006). The determination of whether a “wherein” clause imposes a limitation in a claim must be determined on a case-by-case basis. See, e.g., Griffin v. Bertina, 285 F.3d 1029, 1033-34 (Fed. Cir. 2002) (finding that a “wherein” clause limited a claim where the clause gave “meaning and purpose to the manipulative steps” of the claim); Tex. Instruments Inc. v. ITC, 988 F.2d 1165, 1172 (Fed. Cir. 1993) (holding that “[a] ‘whereby’ clause that merely states the result of the limitations in the claim adds nothing to the patentability or substance of the claim.” (citation omitted)).
MPHJ fails to meet its burden on this issue. First, MPHJ asserts that the ’798 provisional application supports the position that email application software is a required external destination: “a single button (the Go button) directly copies paper from a scan-like device (either a copier with a scan attachment or a scanner) and places it within the third-party application.” J.A. 1819. This statement notably does not reference email application software, and email application software is not mentioned elsewhere in the ’798 provisional application. There is no indication that the “wherein” clause limits this claim by stating a restriction that was “an integral part of the invention” based on the specification and prosecution history. See, e.g., Hoffer v. Microsoft Corp., 405 F.3d 1326, 1330 (Fed. Cir. 2005) (per curiam).
Furthermore, the “wherein” limitation at issue is conditional; it explains that a *1380 specific protocol is used when one of said external destinations is email application software. Under the broadest reasonable interpretation of claim 1, the limitations in the “wherein” clause would not apply because email application software is not required to be the external destination in all embodiments.
Thus, I would find that rendering and transmission to a file server do take place in response to the selection of the “Go button” in XNS, and that email application software is not a required external destination in claim 1. I would therefore affirm the Board’s finding that XNS anticipates claim 1 and its dependent claims.
b. XNS Does Not Anticipate Claims 4-8
Unlike claim 1, claim 4 does not recite a “Go button” and the “interfacing” limitation of claim 4 requires interfacing between a “multifunction peripheral and email application software.” The Board found MPHJ’s argument, that XNS does not disclose the “interfacing” limitation because the GIS 150 scanner does not “interface” with email application software, to be unpersuasive.
XNS does not teach interfacing the GIS 150 scanner with the separate email system described in the XNS architecture. Instead, the GIS 150 scanner can only communicate a scanned document to a file server or a print server. As XNS does not teach single-step interfacing between the GIS 150 scanner and the separate email system of XNS, I would find that XNS does not meet the “interfacing” limitation, and therefore, does not anticipate claims 4-8 of the ’173 patent.
ii. Anticipation under Harkins
a. Harkins Does Not Anticipate Claims 1-3
The Board held that the Harkins user interface discloses the “Go button” of claim 1 because it allows a user to select a document to scan. The Board also held that “rendering” and “transmitting” can occur separately, and the claim language did not preclude rendering from beginning with a “drag-and-drop” step, such as that disclosed in Harkins.
According to MPHJ, the Board found anticipation of claim 1 by Harkins because its construction of “Go button” and understanding of “rendering” did not preclude a manual step of digitally moving documents residing in a repository, even though the repository is “unrelated to the scanner/copier.” MPHJ disputes this finding, because it is not consistent with MPHJ’s narrower proposed claim construction. Under MPHJ’s construction, MPHJ asserts that the multifunction peripheral cannot be both the device that renders the document and the device that receives a transmitted document.
Appellees respond that Harkins anticipates the ’173 patent even under MPHJ’s construction of “Go button,” because the “drag-and-drop” operation of Harkins initiates the process of transmitting the document to the recipient associated with the communication channel. Harkins, col. 10,11. 56-59. When the document arrives, Appel-lees assert that it is rendered according to the recipient’s profile without requiring further action from either the sender or the recipient. Id. col. 10,11. 37-47 (explicitly teaching that a profile describes the form and service “documents should take to be rendered”). Appellees argue that Harkins’s “drag-and-drop” operation requires no further action from the user to both transmit and render.
The “capable of rendering” limitation of claim 1 requires “at least one network addressable scanner, digital copier or other multifunctional ‘peripheral capable of rendering” a document. ’173 patent, col. 86,11. 15-16 (emphasis added). Claim 1 requires *1381 that “a plurality of said external destinations is in communication with said at least one network addressable scanner, digital copier or other multifunction peripheral over a local area network.” Id. col. 86, ll. 84-37 (emphases added). The external destination must receive the document after transmission over a communication network. Id. col. 86, ll. 44-50.
Appellees argue that the ’173 patent uses a fax machine as an example of a multifunction peripheral, and therefore Harkins anticipates because it teaches that a user may invoke the “drag-and-drop” operation to transmit and automatically render the document according to the user’s pre-established profile, using a fax machine. Harkins, fig. 28 (“MULTIFUNCTIONAL PERIPHERAL (i.e. FAX)”).
The language of claim 1 requires that an external destination is in communication with a multifunction peripheral over a local area network. Appellees’ argument therefore fails because the language of the claim makes clear that a single fax machine cannot be both the device that renders the document and the external destination device that receives a transmitted document.
The T73 patent teaches a “Go button” that renders and transmits a document to an external destination in a single step, without the need for manual intervention such as the “drag-and-drop” taught in Harkins. Harkins therefore does not anticipate the “Go button” limitation of claim 1 and its dependent claims.
b. Harkins Does Not Anticipate Claims 4-8
With respect to claim 4, the Board rejected MPHJ’s argument that the scanner and email application are not “interfacing” in Harkins, because Harkins teaches that scanned documents are stored in an intermediary location before they are emailed.
MPHJ argues that Harkins does not satisfy the “interfacing” limitation of claim 4 and its dependent claims because Har-kins teaches moving previously-scanned documents using simple operations, not interfacing a scanner to email application software. MPHJ asserts that the language of the ’798 provisional application essentially requires more than permitting a user to “drag-and-drop” a previously scanned document to a new location.
Appellees assert that Harkins discloses “interfacing” because the user can interact with the Harkins UI to automatically distribute a document over the network, including email. There is no dispute that one of the destinations available to the user in the “drag-and-drop” operation of Harkins is “electronic mail.” Rather, Appellees argue that the Harkins “drag-and-drop” operation is actually itself a single step that results in both the “rendering” and transmission of a digital scan to an external destination.
The “interfacing” limitation at issue reads “interfacing between ... [a] multifunction peripheral and email application software using a first of said interface protocols.” ’173 patent, col. 87, 11. 27-29 (emphasis added). The use of the word “between” in this limitation strongly suggests that the “multifunction peripheral” cannot also be the “email application software,” given that there is no indication that either of these entities can interface with itself. Because “multifunction peripheral” and “email application software” must be distinct, I conclude that Harkins does not anticipate claim 4. Though Har-kins discloses a single “drag-and-drop” operation, as discussed above, this operation need not result in both “rendering” and transmission.
Because Harkins does not meet the “interfacing” limitation of claim 4, I would reverse the Board’s finding of anticipation of claims 1-8 under Harkins.
*1382 c. Obviousness in Light of Harkins and Motoyama
The Board found claims 1-8 to be obvious in light of Harkins in view of Motoya-ma. On appeal, MPHJ challenges the Board’s application of its claim construction and anticipation findings to its obviousness determination.
The petition used Motoyama solely to address the storage of protocols in memory:
Motoyama explicitly discloses a database storing a plurality of communication protocols used for communicating with a variety of networked machines. It would have been obvious to a [person of ordinary skill] at the time of the invention to include the database storing a plurality of communication protocols disclosed by Motoyama in the “multimedia device information system or network” disclosed by Harkins.
J.A. 195. Motoyama does not teach concepts, such as a form of “Go button” or “interfacing,” that would be impacted by reversal of the Board’s claim construction rulings on these terms. Obviousness, therefore, is dependent on agreement with the Board’s decision that Harkins anticipates the challenged claims. Because Har-kins does not anticipate claims 1-8 of the ’173 patent, I would reverse the Board’s finding of obviousness.
Conclusion
I conclude that the Board misconstrued the terms “Go button” and “interfacing” by finding that those terms encompassed the use of manual intervention to render and transmit a scanned document. But I concur with the majority that the Board properly construed “application.” Under these constructions, XNS does anticipate claims 1-3 of the ’173 patent, but does not anticipate claims 4-8. As Harkins does not anticipate claims 1-8 of the ’173 patent, I would reverse the Board’s obviousness determination. I would therefore affirm in part and reverse in part the Board’s judgment in this IPR.

. The '798 provisional application also explains that the "Go button” can be used to directly copy paper "from a third-party application directly to a printer, and makes sure that the image is translated into the proper format (either Windows GOI or proprietary image language) for outputting to a printer device (standard Windows printer or specialty RIP printer).” J.A. 1819.

. As a threshold issue, the Board held that XNS and GIS 150 constituted an "application” under its broad construction. As I would affirm the Board’s construction of "application,” and MPHJ does not dispute that XNS (including GIS 150) meets the "application” limitation under the Board’s construction, I would affirm the Board in this respect.